UNITED STATES DISTRICT COURT    FOR ONLY PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

INGRID CARTER,

                        Plaintiff,                  MEMORANDUM
                                                          AND ORDER
                                                          06-CV-3854 (JG) (LB)

       -against-

JOHN E. POTTER, Postmaster General,
United States Postal Service,

                        Defendant.
-----------------------------------------------------------x

A P P E A R A N C E S :

       INGRID CARTER
            1940 Deer Park Avenue
            P.O. Box 380
            Deer Park, NY 11729
            Plaintiff, *Pro Se*

       BENTON J. CAMPBELL
            United States Attorney
            Eastern District of New York
            271 Cadman Plaza East
            Brooklyn, NY 11201
       By:   Zachary A. Cunha
            Attorney for Defendant

JOHN GLEESON, United States District Judge:

       Ingrid Carter sues the Postmaster General John Potter *pro se*, seeking damages for discrimination on the basis of disability in violation of the Rehabilitation Act, 29 U.S.C. §§ 701-796l, and on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, during her employment with the United States Postal Service ("Postal Service"). Potter moves for summary judgment. For the reasons that follow, the motion is granted.

# BACKGROUND[1]

Carter is employed by the Postal Service as a mail processing clerk. On March 6, 2003, she slipped on a wet floor at work and injured the left side of her shoulder, neck, hip, and lower back. Compl. 4. On July 25, 2003, she reinjured herself by lifting a 30-pound tray of mail, leading to a "crippling pain" on her left side and injuries to her hip, shoulder, neck and back. *Id.* She alleges that the Postal Service delayed processing her workers' compensation forms, although she does not challenge the actual amounts paid to her by the Office of Workers Compensation Programs ("OWCP"). In addition to alleging various delays of several months caused by the Postal Service's failure to submit the necessary forms to OWCP, Carter alleges that a workers' compensation claim she submitted on May 14, 2004 was delayed for over a year and a half because the Postal Service contended that her reinjury was due to her own negligence. Deposition of Ingrid Carter, Nov. 17, 2007, 75-77. Potter argues that any delays in OWCP's processing of her claims were due to Carter's improperly sending the necessary paperwork to OWCP instead of the Postal Service. While Carter concedes that she sent some paperwork to OWCP, she also claims that forms she sent directly to the Postal Service were delayed as well. Carter Dep. 143-44.

Carter claims that at one point the official in charge of processing her workers' compensation claims, Tanya Bostick, stated that the Postal Service was tired of people on limited duty who "don't want to come to work," and that the Postal Service was preparing to send people who don't return to work on limited duty to work at McDonald's. *Id.* at 144-46.

---

[1] The following facts, except where otherwise noted, are undisputed and are drawn from Potter's Statement Pursuant to Local Civil Rule 56.1 ("Def.'s 56.1 Stmt.").

Carter also alleges that the Postal Service refused to accommodate her injuries. She claims that a "referee doctor" for the Postal Service examined her and pronounced her capable for work with the following limitations: no reaching over the shoulder, no lifting, no bending, no standing, no walking, work at waist level, and work for four hours a day for two months before returning to an eight-hour workday. *Id.* at 133-34. In May of 2004, the Postal Service offered Carter the position of manual clerk with restrictions on kneeling, bending, twisting, and lifting or carrying items over 15 pounds, and with a 15-minute break each hour and a chair with back support. She accepted this offer on June 6, 2004. In December of 2006 the Postal Service offered her the position of quality control clerk, which involved sitting for four hours a day, no reaching above the shoulder level, and limits on repetitive motion. She did not respond to this offer. In August of 2007, Carter was again offered the position of manual clerk with restrictions on reaching above the shoulder and repetitive motion. She accepted this modified assignment offer on August 8, 2007. In January of 2008, she was re-offered the position of manual clerk with the same restrictions, and did not respond to this offer.

Carter claims that she refused a position that she was offered because she felt unable to perform the duties it entailed. Carter Dep. 40-41. She requested "patch-up work" repairing damaged pieces of mail, a position that she claimed is customarily filled by disabled individuals. *Id.* at 45-49. Carter claims that she was informed she could not be assigned patch-up work because patch-up work was reserved for union members of the mail handler craft, whereas she was a member of the mail processor craft. *Id.* at 46-47. She also claims that she asked for a chair instead of a stool as an accommodation, which she eventually received after

some delay. *Id.* at 38-39. In her deposition, Carter also claimed that she could have performed office work. *Id.* at 56-57.

Carter also claims that she was discriminated against on the basis of her age because her job duties were too strenuous for employees of her age. However, she admitted in her deposition that 80 to 90 percent of the employees in her unit who performed the same type of work were her age or older. Carter Dep. 150.

After complaining administratively and having her claims dismissed, Carter filed this action on August 3, 2006. *Carter v. Potter*, No. 06-CV-3854 (JG) (LB), 2007 WL 879417, at *1-*2 (E.D.N.Y. Mar. 22, 2007). In addition to making age and disability claims, Carter originally complained of discrimination on the basis of race, national origin, and gender. In an opinion dated March 22, 2007, I granted Potter's motion to dismiss the race, national origin, and gender discrimination claims. *Id.* at *6. I granted Carter leave to amend her complaint to articulate a basis for a claim of gender discrimination, *id.*, but she did not do so, and she indicated in her deposition that she was not pursuing any of the claims that I had dismissed, Carter Dep. 104.[2]

## DISCUSSION

A.  *The Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(c), a moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

---

[2] In her response to Potter's Statement Pursuant to Local Civil Rule 56.1 ("Pl.'s 56.1 Resp."), Carter states, "All the supervisors, injury managers and my immediate Operations managers who had the final authority to decide in my favor, they were all Males; and they all wrote negative comments about me to the Superiors." Pl.'s 56.1 Resp. To the extent that this statement represents an attempt by Carter to amend her complaint to allege gender discrimination after forswearing this claim at her deposition, I deny it as belated and futile.

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994) ("[T]he burden is on the moving party to demonstrate that no genuine issue respecting any material fact exists." (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975))). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)). Therefore, although a court "should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods. Co.*, 530 U.S. 133, 151 (2000).

Summary judgment is proper when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223-24 (citations omitted). That is, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

B.	*Carter's Disability Discrimination Claims*

Section 501 of the Rehabilitation Act of 1973, as amended, bars federal agencies from discrimination on the basis of an individual's disability, using the standards set forth in the Americans with Disabilities Act of 1990 ("ADA"). 29 U.S.C. §§ 791(g), 794a(a)(1).[3] The ADA "defines discrimination to include both adverse employment actions based on the employee's disability, and not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business." *Chass v. Computer Scis. Corp.*, 453 F. Supp. 2d 503, 514 (D. Conn. 2006) (internal citations, quotation marks, brackets and ellipses omitted); *see also Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002) (distinguishing disparate treatment and failure to make reasonable accommodation as different theories supporting recovery under the Rehabilitation Act).

1.	*Adverse Employment Actions*

Section 501 of the Rehabilitation Act incorporates the right of action set forth in Title VII of the Civil Rights Act of 1964 ("Title VII"), *see* 29 U.S.C. § 794a(a)(1) (authorizing a right of action under the Rehabilitation Act incorporating the "remedies, procedures and rights" set forth in 42 U.S.C. § 2000e-16), and thus Rehabilitation Act claims for discrimination through an adverse employment action are analyzed under the framework applicable to other employment discrimination claims, *e.g.*, *City of Middletown*, 294 F.3d at 48-49. To show a violation of the Rehabilitation Act through an adverse employment action, Carter must establish

---

[3] The Rehabilitation Act is the sole remedy for employment discrimination against federal employees on the basis of disability. *Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1998) (citing 42 U.S.C. § 12111(5)(B)).

a prima facie case of discrimination by showing that (1) she is disabled within the meaning of the Act; (2) she was otherwise qualified to perform her job; (3) she suffered an adverse employment action due solely to her disability; and (4) her employer receives federal financial assistance. *Gentile v. Potter*, 509 F. Supp. 2d 221, 235 (E.D.N.Y. 2007) (citing *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994)); *see also Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) (laying out analogous standard for ADA claims).

An adverse employment action under the Rehabilitation Act, just as under other employment discrimination statutes, is a "'materially adverse change in the terms and conditions of employment.'" *E.g.*, *Leget v. Henderson*, No. 99-CV-3636 (DLC), 99-CV-4610 (DLC), 2001 WL 43615, at *5 (S.D.N.Y. Jan. 18, 2001) (quoting *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)); *see also, e.g.*, *Leget*, 2001 WL 43615, at *5 (treating the definition of an adverse employment action under Rehabilitation Act identically to the definition of an adverse employment action under Title VII); *Nakis v. Potter*, 422 F. Supp. 2d 398, 419-20 (S.D.N.Y. 2006) (same); *Ferrer v. Potter*, No. 03-CV-9113 (AJP), 2005 WL 1022439, at *9 n.8 (S.D.N.Y. May 3, 2005) (same). An adverse employment action may not be "'a mere inconvenience or an alteration of job responsibilities,'" but must instead be a more disadvantageous action such as "'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'" *E.g.*, *Leget*, 2001 WL 43615, at *5 (quoting *Galabya*, 202 F.3d at 640).

A delay in processing complaints is unlikely to amount to an adverse employment action. *See, e.g.*, *Badrinauth v. Touro College*, No. 97-CV-3554 (RJD), 1999 WL 1288956, at

7

*6 (E.D.N.Y. Nov. 4, 1999) ("A delay in the receipt of a paycheck is not an adverse employment action."); *Sprott v. Franco*, No. 94-CV-3818, 1997 WL 79813, at *13 n.5 (S.D.N.Y. Feb. 25, 1997) (similar). However, when the delay is of such length that it rises to "more than a mere inconvenience," it might rise to the level of an adverse employment action. *Miller v. N.Y. City Health & Hosp. Corp.*, No. 00-CV-140 (PKC), 2005 WL 2022016, at *6 (S.D.N.Y. Aug. 22, 2005) (finding that a four-year delay in processing might qualify as an adverse employment action).

While most of Carter's claims only allege a delay of only several months and therefore do not rise to the level of adverse employment actions, *cf. Badrinauth*, 1999 WL 1288956, at *6 (finding approximately four-month delay not to rise to the level of an adverse employment action), Carter alleges that one of her workers' compensation claims was delayed for over a year due to the Postal Service's challenges to her eligibility, Carter Dep. 75-77. However, Carter has not produced evidence from which a reasonable jury could conclude that the Postal Service took an adverse employment action by deciding to challenge her eligibility for workers' compensation benefits without making false statements or otherwise violating or abusing the OCWP's procedures. *Cf., e.g.*, *Barriera v. Bankers Trust*, No. 98-CV-3641 (MBM), 2003 WL 22387099, at *7-*8 (S.D.N.Y. Oct. 20, 2003) (finding that a former employer did not take an adverse employment action in a retaliation case by opposing the plaintiff's claim for unemployment benefits where the plaintiff did not allege any facts suggesting that the employer's opposition was "active and vigorous"); *Whalley v. Reliance Group Holdings, Inc.*, No. 97-CV-4018 (VM), 2001 WL 55726, at *12 (S.D.N.Y. Jan. 22, 2001) ("An employer's reasonable defensive measures do not violate the anti-retaliation provisions of the ADA, and a

8

retaliation claim may not be properly used as a vehicle to prevent an employer from exercising his legal rights and engaging in legal advocacy. . . . Since [the plaintiff] initiated the unemployment benefits process, such opposition was [the defendant's] right as a former employer . . . ." (internal citations omitted)); *Conner v. Nicholson*, No. 4:04-CV-100, 2006 WL 1722230, at *9 (W.D. Mich. June 21, 2006) (finding that opposition to a workers compensation claim was not an adverse employment action when the employer had "legitimate grounds for contesting" the plaintiff's claim); *Wright v. Life Start Centers, Inc.*, No. 00-CV-362, 2000 WL 1643781, at *3 (N.D. Ill. Oct. 20, 2000) ("The law certainly permits an employer to oppose a former employee's claim for unemployment compensation; it is difficult to imagine circumstances in which a legitimate challenge could give rise to a claim of retaliation under Title VII."); *Baker v. Summit Unlimited, Inc.*, 855 F. Supp. 375, 376 (N.D. Ga. 1994) (distinguishing unemployment benefit proceedings initiated by plaintiffs from proceedings maliciously and falsely initiated by employers).

Because Carter has not produced evidence from which a reasonable jury might conclude that she was subject to an adverse employment action, I have no occasion to consider whether she has established the other elements of her prima facie case.

2. *Failure to Make Reasonable Accommodation*

An additional way in which Carter claims the Postal Service discriminated against her based on her disability is in failing to make a reasonable accommodation. A plaintiff can make a prima facie showing of failure to make a reasonable accommodation under the Rehabilitation Act by establishing "(1) that [s]he is an individual who has a disability within the meaning of the statute, (2) that an employer covered by the statute had notice of [her] disability,

9

(3) that with reasonable accommodation, [s]he could perform the essential functions of the position sought, and (4) that the employer has refused to make such accommodations." *Stone v. City of Mt. Vernon*, 118 F.3d 92, 96-97 (2d Cir. 1997) (considering § 504 of the Rehabilitation Act); *see also, e.g.*, *Sharma v. Potter*, No. 06-CV-4448 (GAY), 2008 WL 461377, at *3 (S.D.N.Y. Feb. 14, 2008) (applying these factors to claim under § 501 of the Rehabilitation Act).

"[A]n accommodation is reasonable only if its costs are not clearly disproportionate to the benefits that it will produce." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995). The plaintiff bears the burden of proving that "an accommodation exists that permits her to perform the job's essential functions." *Id.* Additionally, she bears a modest burden of production with respect to the reasonableness of the proposed accommodation, which she satisfies by "suggest[ing] the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id.*

The Second Circuit has cautioned that "though 'reasonable accommodation' may include such adjustments as modification of physical facilities, work schedules, or equipment, or some job restructuring, 'reasonable accommodation' does not mean elimination of any of the job's essential functions." *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991) (citation omitted); *see also Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003) ("A reasonable accommodation can never involve the elimination of an essential function of a job.").

Although Potter does not contest that Carter was disabled and that the Postal Service had notice of her disability, no reasonable jury could find that Carter has established a prima facie case of disability discrimination by failing to offer a reasonable accommodation. On several occasions, the Postal Service offered her the position of manual clerk with restrictions on

10

motion, which she accepted but could not continue due to her disability, and the position of quality control clerk with restrictions on motion, which she did not respond to. While light duty assignments may be reasonable accommodations, *see, e.g.*, *King v. Town of Wallkill*, 302 F. Supp. 2d 279, 291 (S.D.N.Y. 2004) ("Reassignment of a disabled employee to a vacant light-duty position is well established as a reasonable accommodation under the ADA."), Carter received light duty assignments and claimed that she was unable to perform the duties they entailed. *Cf. Querry v. Messar*, 14 F. Supp. 2d 437, 445 (S.D.N.Y. 1998) ("An employer need only offer a 'reasonable accommodation'; it need not provide the employee with the accommodation of her choice. By offering [the plaintiffs] 'light duty' assignments, the City satisfied its obligations under the [ADA]." (citation omitted)). The only reasonable accommodation Carter herself has suggested is the use of a different chair, which she received and which did not appear to render her able to perform her duties. Carter Dep. 38-39.

    Carter also complains that the Postal Service did not offer her a different job, but that proposed accommodation is not reasonable within the meaning of the Rehabilitation Act. She complains that the Postal Service failed to assign her to entirely different jobs performing different functions -- administrative office duties or the repair of damaged pieces of mail. This accommodation, however, would not render her able to perform the essential functions of either her original job loading and servicing a mail processing machine, *id.* at 34-35, or her modified assignment performing mail verification.[4] The accommodation Carter proposes is wholly unlike a light duty assignment, which merely modifies the working conditions of what is essentially the same position. *Cf., e.g.*, *Floyd v. Mount Sinai Medical Ctr. Pers. Dir. (Linen Dep't)*, No. 04-CV-

---

[4] This position involves manually directing the sorting of pieces of mail with ZIP codes not readable by the automatic sorting machines. *Id.* at 35-37.

556 (NRB), 2005 WL 612716, at *1 (S.D.N.Y. Mar. 14, 2005) (describing light duty assignment for hospital soiled linen handler as involving folding and packing linen but not pushing heavy linen carts); *Trobia v. Henderson*, 315 F. Supp. 2d 322, 331 (W.D.N.Y. 2004) (describing light duty assignment in post office's "Box Section" as involving customer service and paperwork relating to post office boxes but not actually moving mail to and from the boxes). Instead, this accommodation would do away with Carter's duties entirely and assign her completely different duties. If the only accommodation Carter can suggest involves performing other duties altogether, then she cannot demonstrate that with a reasonable accommodation she can perform her duties.

Accordingly, no reasonable jury could conclude that the Postal Service failed to offer Carter a reasonable accommodation. As no reasonable jury could conclude that the Postal Service took an adverse employment action against Carter based on her disability, *see* Section B.1, *supra*, Potter is entitled to summary judgment on Carter's Rehabilitation Act claim.

C.  *Carter's Age Discrimination Claim*

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Second Circuit recognizes the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), as applicable to a motion for summary judgment on a claim under the ADEA. *Galabya*, 202 F.3d at 639 (citing *Fagan v. N.Y. State Elec. & Gas Corp.*, 186 F.3d 127, 132 & n.1 (2d Cir. 1999)); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) ("[W]e analyze ADEA

claims under the same framework as claims brought pursuant to Title VII." (internal quotation marks omitted)). Under this analysis,

> a plaintiff first bears the "minimal" burden of setting out a prima facie discrimination case, and is then aided by a presumption of discrimination unless the defendant proffers a "legitimate, nondiscriminatory reason" for the adverse employment action, in which event, the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination.

*McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006).

To establish a prima facie case of discrimination, a plaintiff must produce evidence that she (1) "was within the protected age group," (2) "was qualified for the position," (3) "was subject to an adverse employment action," and (4) that "the adverse action occurred under circumstances giving rise to an inference of discrimination." *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003) (internal quotation marks omitted).

Alternatively, plaintiffs can claim age discrimination based on a hostile work environment. Discrimination in the form of a hostile work environment is actionable under the ADEA, and is analyzed under the same framework used for analogous claims under Title VII. *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999). Title VII affords relief where a plaintiff can establish that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation and quotation marks omitted). Courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance." *Id.* at 23. The conduct constituting the hostile work environment must (1) be "objectively severe or pervasive," (2) be subjectively perceived as "hostile or abusive," and (3) occur because of a protected characteristic. *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001).

Carter's sole claim of age discrimination is that she feels that her duties are too strenuous for someone of her age. However, she acknowledges that 80 to 90 percent of her coworkers in her unit, who perform the same duties, are her age or older. Carter Dep. 150. I concluded that Carter has failed to produce evidence from which a reasonable jury could conclude that she was subject to an adverse employment action or a hostile work environment based on her age. Accordingly, Potter is entitled to summary judgment on Carter's age discrimination claim.

## CONCLUSION

For the reasons stated above, the motion is granted and Carter's claims are dismissed in their entirety.

So ordered.

John Gleeson, U.S.D.J.

Dated: April 23, 2008
      Brooklyn, New York